NEW ENGLAND MORTGAGE SECURITY CO., APPELLANT, v. STEPHEN B. HARRIS ET AL., APPELLEES.

Usury: EVIDENCE. Where a loan for $350 was made by the C. Banking Company, and $70 retained for commission, and the testimony of the plaintiff showed that in addition to ten per cent interest the borrower was to pay certain other expenses to the Banking Company, *Held*, That as the amount paid by the borrower to the Banking Company greatly exceeded 12 per cent, it devolved on the plaintiff to show that the value of said services rendered to it, when added to the ten per cent reserved, did not exceed the maximum rate allowed by law. LAKE, CH. J., dissents.

APPEAL from Butler county. Heard below before POST, J.

*D. G. Hull* and *R. D. Stearns*, for appellant.

*C. J. Phelps*, for appellees.

MAXWELL, J.

This is an action to foreclose a mortgage. The defendants in their answer admit the execution of the note and mortgage set out in the petition, but allege that while they were made for the sum of $350, the plaintiffs actually paid the defendants only the sum of $280, the plaintiff retain-

ing $70 out of said sum of $350, and charging ten per cent interest on the entire amount.    There is also an allegation that the money being payable in New York, the contract is governed by the laws of that state, but as this point is not discussed in the brief of the appellee, it will not be considered.    There is also an allegation that the defendants have paid on said note and mortgage in the aggregate the sum of $107.14.    On the trial of the cause, the court found that the Corbin Banking Co. acted as the agent of the plaintiff in negotiating the loan, and that the defendants received only the sum of $280 thereon, and have paid as interest the sum of $107.14.    A decree was therefore rendered in favor of the plaintiff for the sum of $172.86.    The plaintiff appeals.

That $70 of the $350 borrowed was retained, and the defendants received only $280, and that 10 per cent interest was charged on the whole $350 is proved beyond question.  The only question, therefore, for consideration is, does the proof sustain the finding of the court, that the Corbin Banking Co. acted as the agent of the plaintiff in making the loan?    The following is a copy of the note:

"$350.00.                    SUMMIT, NEB., 8 MCH., 1876.

"Value received, on the eighth day of March, 1881, I promise to pay the New England Mortgage Security Company or order, three hundred and fifty dollars with interest from date until paid at 10 per cent per annum as per coupons attached at the office of Corbin Banking Company, 61 Broadway, New York City.  Unpaid interest shall bear interest at 10 per cent per annum.  On failure to pay interest within five days after due, the holder may collect the principal and interest at once.

"No. 14999.                    "STEPHEN B. HARRIS.

"This note secured by a first mortgage on the S. E. 32, 15, 1 E., in Butler county, Nebraska."

Five coupons were also given, of which the following is a copy, except as to the time of payment:

"$35.00. 1st April, 1880, I promise to pay the New England Mortgage Security Company or order thirty-five dollars interest to that date on my note for three hundred and fifty dollars.               STEPHEN B. HARRIS.
"No. 14999.

"Payable at the office of the Corbin Banking Company, 61 Broadway, New York."

It appears from the testimony of Henry Saltonstall that the plaintiff is a corporation organized under the laws of Connecticut, in 1875, "for the purpose of loaning its funds upon improved farms in the west—and its principal office is Boston, Massachusetts, where most of its business is transacted." The manner in which it was to make loans to farmers in the west from its office in Boston is not stated, nor does it appear that it ever made a loan except through the Corbin Banking company. The number of the note (14999) is somewhat suggestive. The deposition of Mr. Saltonstall was taken by the plaintiff, and on cross-examination he testified as follows:

First cross int. Is it not a fact that all loans, or at least many of them, heretofore made through the Corbin Banking company, in which the New England Mortgage Security company is mortgagee, and made payable at the office of the said Corbin Banking company, in New York city, by virtue of an arrangement or agreement between the said New England Mortgage Security company, and the said Corbin Banking company?

Answer to first cross int. If your question is whether or not all or nearly all of the loans made by the New England Mortgage Security company to the Corbin Banking company, as agents of the western farmers who applied for the loans, were to be paid at the office of the Corbin Banking company, in New York, I answer yes. There was not, however, any special agreement to that effect, but no corporation or individual here would lend their money on the security of western farmers unless the persons or company

that acted as agents of the owners of such farms, in soliciting loans, agreed to look after the collection thereof, free of expense to the lender.

Second cross int.    Who, for and on behalf of the said New England Mortgage Security company, made an arrangement with the Corbin Banking company by which the note in question, principal and interest, should be made payable at the office of the Corbin Banking company in New York city; and was the arrangement made at the time the application in this case was submitted to you or your said company?

Second answer.    I never made any such arrangement, nor did any other officer of the New England Mortgage Security company, to my knowledge.    General Osborne, reasurer of the Corbin Banking company, as a part of the inducement to me to make the loan, without which I should have refused to make it, agreed to make it payable, principal and interest, at the office of the Corbin Banking company in New York.    I did not offer or agree, on behalf of the New England Mortgage Security company, to pay the Corbin Banking company anything for collecting either principal or interest.

Third cross int.    Where was it arranged between the New England Mortgage company and the said Corbin Banking company that all loans made through the Corbin Banking company should be made payable at the office in New York city.

Answer.    No special agreement was ever made that all loans made by the New England Mortgage Security company, at the solicitation of the Corbin Banking company, should be made payable at the New York house of the Corbin Banking company.

Fourth cross int.    Has not your company, prior to the making of the loan in suit, made other similar loans through the said Corbin Banking company?

Fourth answer.    Our company never made a loan through the Corbin Banking company acting as its agent.    Other

western farmers have obtained loans from us through the Corbin Banking company, having in their applications appointed said company their agents.

Fifth cross int. Has not your company, prior to the making of the loan in suit, had, and did not your company at the time this loan was made have, other like notes and mortgages in the hands of the Corbin Banking company, where, by the terms of said notes and mortgages, the interest was payable at said Corbin Banking company's office in New York city, with an agreement between the said New England Mortgage Security company, should collect the interest and perform other acts for the New England Mortgage Security company in collecting interest or perform other services?

Answer. No. The New England Mortgage Security company keeps its notes and mortgages in its own possession. The general custom of the Corbin Banking company is to solicit loans for its principals in the west, and as an inducement to the person or company to which the officer oi the Corbin Banking company applies to make the loan, the Corbin Banking company volunteers to look after collecting the interest and principal as they fall due. There has been no special agreement between the companies, but there is the general understanding, without which we should have been unwilling to make any loans in the west, that the agent or the borrower should collect the interest free of charge. This understanding is not peculiar to or confined to the Corbin Banking company and the New England Mortgage Security company, but is the general understanding and agreement between every eastern lender and every western borrower so far as I know, as a part of the business, and without which no money could be borrowed in the east by western farmers.

Mr. Saltonstall was the president of the Mortgage Security company at the time the loan in question was made, and from his own admission the moment a loan was made

that instant the Corbin Banking company became the agent of the Security Company to collect the amount with the interest. This agency existed not only in this case, but in all others where loans had been effected, and there seems to have been many of them. The borrowers, Mr. Saltonstall states, in effect, were to pay the plaintiff's agent for the services rendered to the plaintiff in making collections; in other words, the plaintiff was to have ten per cent interest net, being three or four per cent above the legal rate in Massachusetts, and the borrower was to pay, in excess of ten per cent, for the services rendered by the banking company to the plaintiff. And we do not know what those services were valued at, nor what proportion of the $70 retained was kept for these services. But as the whole amount retained greatly exceeded twelve per cent interest, the highest legal rate permissible in this state when the loan was made, it devolved upon the plaintiff to show that the value of these services did not, with the ten per cent reserved, exceed twelve per cent. The statute fixes the maximum rate of interest, and a party cannot evade the law by exacting so much in money and an additional sum in valuable services, the aggregate exceeding the maximum allowed by law. The statement that no loans would have been made except in that way, shows that the services were regarded as valuable, and probably exceeded the highest rate fixed by law. But in our opinion the proof clearly shows the agency of the banking company before the loan was made.

To show an agency it is not necessary to show an express contract to that effect. It is sufficient if the acts are done for the principal and are accepted as such by him. This the proof in this case clearly tends to prove. It is unnecessary to review the testimony further. The finding and judgment of the district court are sustained by the testimony, and are affirmed.

JUDGMENT AFFIRMED.

LAKE, CH. J., dissents.